UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

CIVIL ACTION FILE NO. 03-255-JMH

| | |
|---|---|
| DUANE and SAUNDRA SWANSON,<br><br>                                        PLAINTIFFS<br>v.<br><br>CENTRAL BANK & TRUST CO.,<br>NATIONAL CITY MORTGAGE CO.,<br>CITIFINANCIAL, INC., as corporate successor to KENTUCKY FINANCE CO., INC.,<br>EQUIFAX INFORMATION SERVICES, LLC,<br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br>and<br>TRANS UNION, LLC,<br><br>                                        DEFENDANTS | **Complaint**<br>Trial by Jury Requested<br><br>Eastern District of Kentucky<br>FILED<br><br>JUN 13 2003<br><br>AT LEXINGTON<br>LESLIE G WHITMER<br>CLERK U S DISTRICT COURT |

Plaintiffs, Duane and Saundra Swanson, for their Complaint state as follows:

### Jurisdiction and Venue

1.     This action arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*; the claims arising under state law are so related to claims in the action within this Court's federal-question jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. This Court therefore has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## Parties

3. Plaintiffs are natural persons, married to each other and residing in Garrard County, Kentucky.

4. Defendant Central Bank & Trust Co. ("Central Bank") is a Kentucky corporation with a principal place of business at 300 Kincaid Towers, Lexington, Fayette County, Kentucky, 40507. Central Bank's registered agent for service of process is BTH Inc., Lexington, 2700 Lexington Financial Center, Lexington, Kentucky 40507.

5. Defendant National City Mortgage Co. ("National City") is a foreign corporation. National City's registered agent for service of process is CT Corporation System, Kentucky Home Life Building, Suite 1511, 239 South 5th Street, Louisville, Kentucky 40202.

6. Defendant CitiFinancial, Inc. is a Kentucky corporation, a wholly-owned subsidiary of Citigroup, Inc. Its registered agent for service of process is CT Corporation System, Kentucky Home Life Building, Suite 1511, 239 South 5th Street, Louisville, Kentucky 40202. Upon information and belief, CitiFinancial, Inc. is the corporate successor of Kentucky Finance Co., Inc. ("Kentucky Finance"), and is liable for the actionable practices of Kentucky Finance that are alleged in this Complaint.

7. Defendant Equifax Inc. ("Equifax") is a foreign corporation. Equifax's registered agent for service of process is Prentice Hall Corporation System, 421 West Main Street, Frankfort, Kentucky 40601.

8. Defendant Experian Information Solutions, Inc. ("Experian") is a foreign corporation. Experian's registered agent for service of process is CT Corporation System, Kentucky Home Life Building, Suite 1511, 239 South 5th Street, Louisville, Kentucky 40202.

9. Defendant Trans Union, LLC ("Trans Union") is a foreign corporation. Trans Union's registered agent for service of process is Prentice Hall Corporation System, 421 West Main Street, Frankfort, Kentucky 40601.

## Background

### Central Bank Accounts

10. In June 2000, the Swansons purchased a 2000 Trail Lite Bantam camper ("the Camper") from Hall Enterprises, Inc. ("Hall"), for personal, family, and household use.

11. On June 9, 2000, the Swansons executed a Retail Installment Contract and Security Agreement ("RICSA") with Hall in the amount of $11,831.00 for the Camper. On or after June 10, 2000, Hall assigned the RICSA to Central Bank.

12. Soon after the purchase, the Swansons contacted Hall and revoked their acceptance of the Camper. A dispute involving the Swansons, Hall, and Central Bank arose as to the parties' respective rights and obligations.

13. A settlement of the dispute was reached between the Swansons and Central Bank on December 12, 2000, when the parties signed a Mutual Release (a copy is attached as Exhibit A). In consideration of the Swansons' return of the Camper to Hall, Central Bank agreed to consider the RICSA to be satisfied and covenanted not to make any claim or demand relating to the RICSA.

14. On June 21, 2000, the Swansons purchased a 1995 Chevrolet Blazer (the "Blazer") from Glenn Buick-GMC Truck, Inc. ("Glenn"). The Swansons executed a RICSA with Glenn in the amount of $13,702 for the Blazer.

15. On or after June 21, 2000, Glenn assigned the RICSA to Central Bank.

16. The Swansons received a letter from Defendant Central Bank, dated June 29, 2001, informing the Swansons that they had "a charged off account with us." A copy of the letter is attached as Exhibit B. The letter further stated that the account, with an unpaid balance of $667.72 plus interest, was charged off on June 29, 2001, and "reported to the credit bureau as a bad debt." The letter does not provide any other information about the account.

17. Upon receiving the letter, the Swansons immediately contacted Central Bank about the letter and were told that it was sent in error.

18. Prior to the letter from Central Bank, the Swansons had not received any notice regarding an alleged deficiency on any Central Bank account.

19. Contrary to the terms of the Mutual Release, the Camper account with Central Bank subsequently appeared on Duane and Saundra Swansons' credit reports variously as follows:

   a. A June 15, 2001, Equifax credit report for Saundra Swanson reported that the account had an unpaid balance of $11,610 and was $1831 past due, reported the previous payment history as being late on several occasions, and gave the account a negative "I5" rating (indicating payment made on the installment account was 120 days or more late past the due date or the account is in collections).

   b. An August 9, 2001, Equifax credit report for Saundra Swanson reported that the account had an unpaid balance of $667, reported the previous payment history as being late on several occasions, gave the account a negative "I9" rating (indicating the installment account has been charged off to bad debt), and noted the account was "charged off."

   c. A March 26, 2002, Trans Union credit report for Saundra Swanson reported the account under adverse information as "settled – less than full balance."

-4-

      d.     A March 26, 2002, Trans Union credit report for Duane Swanson reported the account under adverse information as "settled – less than full amount" and as having been "charged off as bad debt."

      e.     A May 1, 2002, Equifax credit report for Duane and Saundra Swanson reports the account under "delinquent trade" information as "settlement accepted on account" and gives the account an "I0" rating (indicating an installment account approved, but not used or too new to rate). The amount of high credit is given as $13,702.

    20.     The Blazer account with Central Bank has appeared on Duane and Saundra Swansons' credit reports variously as follows:

      a.     An August 9, 2001, Equifax credit report for Saundra Swanson omits the account.

      b.     A March 26, 2002, Trans Union credit report for Saundra Swanson omits the Blazer account; however, a credit report from Trans Union and on the same day for Duane Swanson lists the Blazer account and gives it a positive rating.

      c.     A May 1, 2002, Equifax credit report for Duane and Saundra Swanson omits the account.

      d.     A June, 2002, Fidelity National Credit Services credit report for Duane and Saundra Swanson reported the Blazer account in two places. In one place, it rates the account with a positive "I1" rating (indicating the installment account is being paid as agreed); at another, the account is reported with a negative "I9" rating and that the account was "placed for collection on 5/01/2002."

    21.     The Swansons repeatedly notified Central Bank of the erroneous reporting of the Camper and Blazer accounts and made repeated requests of Central Bank to correct the reporting errors on the Camper and Blazer accounts.

-5-

22. Central Bank responded to some of the Swansons' complaints by deleting account information from its internal records of Saundra Swanson's accounts. Accounts other than the Camper and Blazer accounts were deleted by Central Bank in the process, erasing accounts with good payment histories.

23. Some of Saundra Swanson's accounts that have been deleted by Central Bank are accounts she holds jointly with Duane Swanson. Errors relating to those joint accounts persist on Duane Swanson's credit files, as alleged above.

24. Upon information and belief, when notified of the disputes of the accuracy of the Blazer and Camper account information reported in the Swansons' credit files, Central Bank did not investigate the disputed account information.

25. Upon information and belief, Central Bank did not report the results of any investigation or otherwise provide accurate information to the consumer reporting agencies to which it furnishes information. In addition, or in the alternative, Defendants Equifax, Experian, and Trans Union, are not accurately reporting corrected information provided by Central Bank.

National City Account

26. In December 1994, the Swansons obtained a mortgage loan on their home from National City in the principal amount of $80,850.

27. In October 1997, the Swansons filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Eastern District of Kentucky; they received a discharge order in March 1998.

28. Although National City was listed among their creditors when they filed the voluntary petition, the Swansons were not discharged from the mortgage loan. Between the filing of the petition and the discharge order, when they sold their home, the Swansons paid the National City account. National City acknowledged that the

mortgage had been fully paid and satisfied in a Satisfaction of Mortgage dated January 21, 1998, and recorded with the Fayette County Court Clerk in Release Book 480 Page 670. A copy of the Satisfaction of Mortgage is attached as Exhibit C.

29. The National City account has appeared on Duane and Saundra Swansons' credit reports variously as follows:

    a. A July 11, 2001, Equifax credit report for Saundra Swanson reports it as "included in bankruptcy."

    b. A March 26, 2002, Trans Union credit report for Duane Swanson reports it as "charged off as bad debt." A Trans Union credit report for the same date for Saundra Swanson reports it "paid or paying as agreed."

    c. A March 27, 2002, Equifax credit report for Duane Swanson reports it as "included in bankruptcy." An Equifax credit report for the same date for Saundra Swanson omits any information about the account.

    d. A May 1, 2002, Equifax credit report for Duane and Saundra Swanson reports it as "included in bankruptcy."

    e. A May 22, 2002, Equifax credit report for Duane Swanson reports it as "included in bankruptcy." An Equifax credit report for the same date for Saundra Swanson omits any information about the account.

    f. A June 2002, Fidelity National Credit Services credit report for Duane and Saundra Swanson reports it as "paid—collection" and rates it a negative "M9" (indicating the account was charged off as a bad debt).

    g. An October 25, 2002, Experian credit report for Saundra Swanson reports it as "included in bankruptcy."

30. The Swansons notified National City of the erroneous reporting of the mortgage as included in bankruptcy. Eloise Garner, an employee of National City Bank

of Kentucky, sent a fax on July 5, 2001, to NCM Customer Service Research indicating that the account had been erroneously reported as included in bankruptcy and directing Customer Service to correct the information and notify all consumer reporting agencies that had been furnished with the erroneous information. A copy of the fax is attached hereto as Exhibit D.

31. Upon information and belief, National City did not report the results of its investigation or otherwise provide accurate information to the consumer reporting agencies to which it furnishes information. In addition, or in the alternative, Defendants Equifax, Experian, and Trans Union, are not accurately reporting corrected information provided by National City.

Kentucky Finance Accounts

32. The Swansons obtained a loan with Kentucky Finance in June 1995 (the "6/95 Kentucky Finance account") in the amount of $1,677.00.

33. The Swansons paid on the 6/95 Kentucky Finance account until it was paid in full.

34. The 6/95 Kentucky Finance account has appeared on Duane and Saundra Swansons' credit reports as follows:

a. A May 1, 2002, Equifax credit report for Duane and Saundra Swanson reports it as "account paid satisfactorily; current account; bankruptcy." The account number and date the loan was first opened is incorrect; the correct account information for the 6/95 loan is later reported in the same credit report as having been paid and closed.

b. A June 2002, Fidelity National Credit Services credit report for Duane and Saundra Swanson reports it as included in bankruptcy. Some of the

information included about this account is incorrect and is confused with other Kentucky finance accounts.

35. Saundra Swanson obtained a loan with Kentucky Finance in July 1997 (the "7/97 Kentucky Finance account") in the amount of $517.00.

36. Saundra Swanson paid on the 7/97 Kentucky Finance account until it was paid in full.

37. The 7/97 Kentucky Finance account has appeared on Duane and Saundra Swansons' credit reports as follows:

    a. A June 15, 2001, Equifax credit report for Saundra Swanson reports it as included in bankruptcy.

    b. A July 11, 2001 Equifax credit report for Saundra Swanson reports it two times on the credit report, each time as included in bankruptcy.

    c. A March 26, 2002, Trans Union credit report for Saundra Swanson reports it as included in bankruptcy.

    d. A June 2002, Fidelity National Credit Services credit report for Duane and Saundra Swanson reports it as "paid-collection" and rates it a negative "I9."

    e. An October 25, 2002 Experian credit report for Saundra Swanson reports it as discharged in bankruptcy.

38. Although Kentucky Finance was listed among their creditors when the Swansons filed the voluntary petition for bankruptcy, the Swansons reaffirmed their existing debts with Kentucky Finance and were not discharged from the Kentucky Finance accounts.

39. Upon information and belief, Kentucky Finance responded to some of the Swansons' inquiries regarding their Kentucky Finance accounts by deleting account

information from its internal records of three accounts. Accounts with good payment histories were deleted in the process.

40. A letter from Karen Berube at CitiFinancial was sent to Saundra Swanson on May 9, 2003, informing her that CitiFinancial would contact the three major consumer reporting agencies regarding three Kentucky Finance accounts and request that the consumer reporting agencies "delete Tradeline; no records found" and update their records accordingly (a copy of the letter is attached as Exhibit E).

41. Upon information and belief, Kentucky Finance did not investigate disputed accounts or otherwise provide accurate information to the consumer reporting agencies to which it furnishes information. In addition, or in the alternative, Defendants Equifax, Experian, and Trans Union, are not accurately reporting corrected information provided by Kentucky Finance.

Consumer Reporting Agencies

42. Upon information and belief, Fidelity National Credit Services receives consumer reporting information from Equifax, Experian, and Trans Union.

43. The Swansons notified Defendants Equifax, Experian, and Trans Union of the errors regarding the Central Bank, National City Mortgage, and Kentucky Finance accounts, disputing the reporting of these accounts numerous times. For example:

    a. In early summer 2001, Saundra Swanson disputed accounts in her Equifax credit file. A letter dated June 15, 2001, was sent, noting that the reinvestigation was done and her credit file had been updated.

    b. In late summer 2001, Saundra Swanson disputed the reporting of several accounts in her Equifax credit file, including the Blazer account with Central Bank, two accounts with Kentucky Finance, and the National City account. A letter

dated August 9, 2001, was sent with the results of the reinvestigation. The accounts were deleted from her credit file.

  c. In October 2002, Duane and Saundra Swanson each sent letters to Equifax, Experian, and Trans Union to dispute the reporting of the Camper and Blazer accounts, the National City account, and the 6/95 and 7/97 Kentucky Finance accounts in their credit files.

  44. The consumer reporting agencies responded inadequately to the Swansons' complaints. For example:

  a. Some consumer reporting agencies failed to respond altogether to the Swansons. Only Trans Union replied to the Swansons' October 2002 letters.

  b. Trans Union returned the results of its investigation in a report dated November 11, 2002. Trans Union deleted positive account information that was not disputed. The investigation in response to the October 2002 letter resulted in the deletion from Saundra Swanson's Trans Union credit file of five Central Bank accounts, one National City Mortgage account, and two Kentucky Finance accounts. The National City Mortgage account, and three Kentucky Finance accounts were deleted by Trans Union from Duane Swanson's Trans Union credit file. The report was accompanied by new credit reports for Duane and Saundra Swanson. Saundra Swanson's new Trans Union credit report shows no Central Bank accounts.

  c. Equifax, Experian, and Trans Union fail to note or indicate on the Swansons' credit reports the fact that Central Bank, National City Mortgage, and Kentucky Finance accounts are disputed by the Swansons, as required under 15 U.S.C. §§ 1681c(f) and 1681i(c).

45. Defendants Equifax, Experian and Trans Union failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained in the Swansons' respective credit reports.

46. Upon information and belief, Defendants Equifax, Experian, and Trans Union notified Defendants Central Bank, National City and Kentucky Finance of the Swansons' dispute of the respective accounts.

Injury to the Swansons

47. Defendants' failures to provide accurate information about the Swansons' credit histories and their failures to correct disputed information in an accurate and timely manner have caused the Swansons to expend time and other resources in repeated efforts to obtain accurate reporting of their credit histories.

48. The Swansons also have suffered injury to their credit rating and have been denied credit on favorable terms (or altogether) due to the erroneous reporting of their credit histories. For example, the Swansons applied for a loan to start a business through American Home Loans in June of 2002 and were turned down because of the negative information about the Blazer account on a credit report. A letter from Neil Griggs, a loan officer at American Home Loans, to Central Bank points out that the account was affecting the Swansons' ability to refinance (a copy of the letter is attached as Exhibit F).

49. Defendants' failures to provide accurate information about the Swansons' credit histories and their failures to correct disputed information in an accurate and timely manner have caused the Swansons to suffer embarrassment, emotional stress, anxiety, and humiliation.

50. Damage to the Swansons' apparent creditworthiness has been caused not only by the inclusion of inaccurate negative information in their credit histories, but also by the omission or deletion of correct, positive account information.

## Claims

### Fair Credit Reporting Act violations

51. At all times relevant hereto, Defendants Equifax, Experian, and Trans Union regularly engage in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and use one or more means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports for monetary fees, dues, or on a cooperative nonprofit basis.

52. At all times relevant hereto, Defendants Central Bank, National City, and Kentucky Finance, in the ordinary course of business, regularly furnish information to one or more consumer reporting agencies about transactions or experiences with one or more consumers.

53. After notice of a dispute with respect to the Central Bank accounts, Defendant Central Bank failed to take the necessary actions to investigate the accuracy of information provided to consumer reporting agencies and to report the results of any such investigation of the accuracy of the disputed information to the consumer reporting agencies, in willful or negligent violation of 15 U.S.C. § 1681s-2(b).

54. After notice of a dispute with respect to the National City account, Defendant National City failed to take the necessary actions to investigate the accuracy of information provided to consumer reporting agencies and to report the results of an investigation of the accuracy of the disputed information to the consumer reporting agencies, in willful or negligent violation of 15 U.S.C. § 1681s-2(b).

55. After notice of a dispute with respect to the 6/95 and 7/97 accounts, Defendant Kentucky Finance failed to take the necessary actions to investigate the accuracy of information provided to consumer reporting agencies and to report the results of an investigation of the accuracy of the disputed information to the consumer reporting agencies, in willful or negligent violation of 15 U.S.C. § 1681s-2(b).

56. The Swansons are entitled to recover all relief available for violations of the FCRA by Defendants Central Bank, National City and Kentucky Finance, including actual damages and other remedies listed in 15 U.S.C. § 1681n and 1681o (costs, a reasonable attorney's fee, and punitive damages as the Court may allow).

57. With respect to the Central Bank, National City, and Kentucky Finance accounts, Defendants Equifax, Experian, and Trans Union failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained in the Swansons' credit reports, in willful or negligent violation of 15 U.S.C. § 1681e.

58. With respect to the Central Bank, National City, and Kentucky Finance accounts, Defendants Equifax, Experian, and Trans Union, upon notification by the Swansons on numerous occasions, failed to indicate the fact that the information provided was disputed by the Swansons, in willful or negligent violation of 15 U.S.C. § 1681c.

59. The Swansons are entitled to recover all relief available for any violations of the credit reporting laws by Defendants Equifax, Experian, and Trans Union, including actual damages and other remedies listed in 15 U.S.C. § 1681n and 1681o (costs, a reasonable attorney's fee, and punitive damages as the Court may allow).

Kentucky Consumer Protection Act Violations

60. The Swansons obtained financial services from Central Bank in the form of loans primarily for personal, family, or household purposes.

61. The conduct of Defendant Central Bank in dealing with the Swansons constitutes unfair, false, misleading or deceptive acts or practices in the conduct of trade or commerce, within the meaning of the Kentucky Consumer Protection Act, KRS 367.170. In particular, Central Bank:

    a. furnished false and negative information about the Camper account to consumer reporting agencies despite its covenants in the Mutual Release;

    b. sent a letter to the Swansons regarding a Central Bank account, informing the Swansons that the account had been reported as delinquent to a third-party and threatening legal action if the account was not repaid;

    c. continued to furnish consumer reporting agencies with false and inaccurate information about the Camper account after the error was brought to its attention;

    d. continued to furnish consumer reporting agencies with false and inaccurate information about the Blazer account after the error was brought to its attention; and

    e. responded to the Swansons' repeated requests that it correct the reporting errors by deleting from its records every account, current or closed, held by Saundra Swanson with Central Bank.

62. As a result of Central Bank's unfair, false, misleading, or deceptive acts or practices, the Swansons suffered and continue to suffer an ascertainable loss of money and property and are entitled to all relief available under KRS 367.220, including the award of punitive damages and a reasonable attorney's fee.

63. The conduct of Defendant National City in dealing with the Swansons constitutes unfair, false, misleading, or deceptive acts or practices in the conduct of

trade or commerce, within the meaning of the Kentucky Consumer Protection Act, KRS 367.170. In particular, upon information and belief, National City:

    a.    furnished false and negative information about the National City account to consumer reporting agencies; and

    b.    continued to furnish consumer reporting agencies with false and inaccurate information about the account after the error was brought to National City's attention.

64.    The conduct of Defendant Kentucky Finance in dealing with the Swansons constitutes unfair, false, misleading or deceptive acts or practices in the conduct of trade or commerce, within the meaning of the Kentucky Consumer Protection Act, KRS 367.170. In particular, Kentucky Finance:

    a.    furnished false and negative information about the Kentucky Finance accounts to consumer reporting agencies;

    b.    continued to furnish consumer reporting agencies with false and inaccurate information about the account after the errors were brought to Kentucky Finance's attention; and

    c.    responded to the Swansons' inquiries by deleting the accounts from their records.

65.    The conduct of Defendants Equifax, Experian, and Trans Union in dealing with the Swansons constitutes unfair, false, misleading or deceptive acts or practices in the conduct of trade or commerce, within the meaning of the Kentucky Consumer Protection Act, KRS 367.170. In particular, Equifax, Experian, and Trans Union:

    a.    reported inaccurate account information regarding the Central Bank, National City and Kentucky Finance accounts, often confusing and mixing up account information;

b. continued to report false and inaccurate information about the Central Bank, National City and Kentucky Finance accounts after the Swansons brought the errors to their attention;

c. failed, upon receiving notice by the Swansons of their dispute of erroneous account information, to indicate on reports the fact that the accounts were in dispute;

d. deleted account information from the Swansons' credit reports which had not been disputed by the Swansons and which accounts included positive account ratings; and

e. continued to report erroneous account information on Duane Swanson's credit reports with respect to accounts held jointly with Saundra Swanson while deleting the account information from Saundra Swanson's credit reports.

66. The unfair, false, misleading or deceptive acts or practices alleged in this Complaint include, but are not limited to, failures and omissions with respect to obligations under federal statutes and regulations.

67. The Kentucky Consumer Protection Act and the federal statutes and regulations are intended to protect the consumer public from unfair, false, misleading or deceptive acts or practices. The Defendants have violated these statutes and regulations as alleged in this Complaint and, as a proximate result, the Swansons suffered injury.

68. For Defendants' violation of the consumer protection standard in KRS 367.170, the Swansons are entitled to compensatory and punitive damages.

Breach of Contract (Central Bank)

69. The Swansons and Defendant Central Bank signed the Mutual Release on December 12, 2000, as an accord and satisfaction of the Camper account.

70. Central Bank's subsequent demands on the Swansons for payment and the furnishing of false information regarding the Camper account to consumer reporting agencies are in breach of the Mutual Release.

71. The Swansons are entitled to damages resulting from Central Bank's breach of the terms of the Mutual Release, including incidental and consequential damages.

<u>Tortious Interference with Prospective Contractual Relations</u> (Central Bank)

72. The conduct of Defendant Central Bank in reporting the Camper account as delinquent to credit reporting agencies tortiously interfered with the Swansons' prospective contractual relations. In particular:

    a. Central Bank published information on the Camper account without regard to truth and despite its covenants in the Mutual Release.

    b. Its actions were malicious and without justification.

    c. The Swansons were denied credit as a direct result of Central Bank's malicious conduct.

73. The Swansons are entitled to all relief available therefore, including compensatory, consequential, and punitive damages.

WHEREFORE, Plaintiffs Duane and Saundra Swanson request the following:

    A. Compensatory damages in an amount to be determined at trial;

    B. Punitive damages in an amount adequate to punish Defendants' misconduct and to deter Defendants and others from engaging in similar misconduct in the future;

    C. Applicable statutory damages and penalties;

    D. Award of reasonable attorney's fees and expenses of the litigation;

E.  Trial by jury on all issues so triable; and

F.  Such other relief to which they may be entitled.

         Respectfully submitted,

         Katherine S. Sanford
         Katherine K. Yunker
         YUNKER & ASSOCIATES
         P.O. Box 21784
         Lexington, KY 40522-1784
         (859) 255-0629
         Fax: (859) 255-0746

By: _____

ATTORNEYS FOR PLAINTIFFS,
DUANE AND SAUNDRA SWANSON

## Complaint Exhibits

| Exhibit | Description |
| --- | --- |
| A | Mutual Release dated 12/12/00 |
| B | Letter from Central Bank dated 6/29/01 |
| C | Satisfaction of Mortgage dated 1/21/98 |
| D | Fax from Eloise Garner dated 7/5/2001 |
| E | Letter from Karen Berube dated 5/9/2003 |
| F | Letter from Neil Griggs dated 6/28/2002 |